950 A.2d 101

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Patrick Joseph SMITH.**

**No. 27 Sept. Term, 2007.**

Court of Appeals of Maryland.

June 13, 2008.

Dolores O. Ridgell, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Com'n of Maryland), for Petitioner.

Bruce L. Marcus (Robert C. Bonsib of MarcusBonsib, LLC, Greenbelt), for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, JJ., and JOHN C. ELDRIDGE and DALE R. CATHELL, JJ. (Retired, Specially Assigned).

DALE R. CATHELL, Judge (Retired, Specially Assigned).

On August 20, 2007, the Attorney Grievance Commission of Maryland, petitioner, by Melvin Hirshman, Bar Counsel, and Dolores O. Ridgell, Assistant Bar Counsel, filed a petition for disciplinary action[1] against Patrick J. Smith, respondent, for multiple violations of the Maryland Rules of Professional Conduct (MRPC). The petition alleged that respondent, based upon his actions related to his representation of Joshua Teague, had violated MRPC 3.4 and 8.4(a)-(d).[2]

Pursuant to Md. Rule 16–752(a) this Court assigned the matter to Judge Ronald B. Rubin of the Circuit Court for Montgomery County to conduct a hearing and to make findings of fact and conclusions of law.

On January 3, 2008, an evidentiary hearing was held before the hearing judge. On January 30, 2008, Judge Ronald Rubin of the Circuit Court for Montgomery County entered his Memorandum Opinion in which he found that the above violations of the MRPC had occurred and the fact that Smith's

---

**1.** Petitioner filed a petition with this Court initiating disciplinary proceedings against Patrick Smith, pursuant to Maryland Rule 16–751(a) regarding petitions for disciplinary or remedial action which states, in part, that: "Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

**2.** The relevant provisions of the MRPC state:
   "**Rule 3.4. Fairness to Opposing Party and Counsel.**
   A lawyer shall not:
   (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act....
   "**Rule 8.4. Misconduct.**
   It is professional misconduct for a lawyer to:
   (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice...."

criminal convictions[3] were reversed did not preclude these violations. The record was transferred from the hearing judge to this Court for oral argument. Pursuant to Md. Rule 16–758(b), respondent filed with this Court exceptions and recommendations to the hearing judge's findings of fact and conclusions of law.

## Facts

Respondent was admitted to the Bar of Maryland in 1979 and maintains his practice of law as a sole practitioner in his office located in Rockville, Maryland. He was admitted to the Bar of the District of Columbia in 1979 and to the Bar of Georgia in 1978, in which state his status currently is inactive. He is also a member of the bars of the federal courts in Maryland and the District of Columbia.

Judge Rubin's findings and conclusions are, in part, as follows:

### "Findings of Fact

1. Patrick Joseph Smith ('Smith') was born on March 13, 1948[,] in Lawrence, Massachusetts. He is the 5th of 15 children.

2. Smith is married and is the father of two children. Mrs. Smith is a long-standing employee of a federal law

---

**3.** Smith was arrested on February 19, 2004, on charges of impersonating a police officer, intimidating a witness and obstructing justice. On February 23, 2004, Smith demanded a speedy trial. Smith's criminal trial commenced April 26, 2005, 425 days after his arrest. After a bench trial, on April 27, 2005, Smith was convicted of impersonating a police officer and intimidating a witness. Smith was acquitted of obstructing justice.

Smith's convictions were reversed in an unreported opinion by the Court of Special Appeals on the ground that his Sixth Amendment right to a speedy trial had been violated. *Smith v. State,* No. 1437, September Term, 2005 (May 4, 2007). The State did not appeal by way of a petition of certiorari to the Court of Appeals. On October 5, 2007, the "State entered all of the charges filed against Mr. Smith as *Nolle Prosequi* [(Md. Rule 4–247)] in the Circuit Court for Montgomery County, Maryland."

enforcement agency. One child is an attorney practicing in New York City. The other child is in graduate school.

3. Smith received his undergraduate degree in 1970 from Merrimack College, North Andover, Massachusetts[,] and his juris doctorate in 1978 from the Potomac School of Law, Washington, D.C.

. . .

5. From March 1986 to the present. . . . His practice is concentrated in the areas of personal injury and criminal defense. Previously, he worked with a number of leading members of the bar. . . .

6. Smith has represented defendants in over 2,000 criminal matters and has dealt honorably with state and federal prosecutors and judges. Apart from the instant matter, Smith has not been the subject of any filed complaints or attorney grievance proceedings.

7. In addition to his legal practice, Smith has devoted substantial time and energy to public service. From May 1990 through June 1991, Smith was Special Counsel to the United States Sentencing Commission and was instrumental in developing alternatives to federal imprisonment. In 1992, Smith received a Citation from the Governor of Maryland for his work in Law in the Public Schools. In 1996, Smith received a Citation from the Governor of Maryland for his work on the Task Force on Sentencing and Sentencing Alternatives.

8. From 1992 through 1998, Smith served on the Executive Advisory Board of the Vietnam Veterans Institute, which provides health care services to wounded war veterans.

9. Smith has been active in the Bar Association of Montgomery County, Maryland. From 1989 through 1990, Smith was Chair of the Mentor Program for New Practitioners. In 1992, he received the Pro Bono Service Award. From 1998 to the present, Smith has been a member of the Victims Rights Foundation. Smith also has been instrumental in developing public television programs on law in Montgomery County and, in 1990, received a Certificate

from the Maryland State Bar Association in Citizenship and Law–Related Education for his work with Maryland public schools.

10.  Smith has received recognition from numerous civil and public service programs, including his work on public housing for elderly and disabled residents, business development in the City of Rockville and fire safety.

11.  Smith has an exemplary reputation in the legal and professional community for honesty, veracity, and good character. . . .

12.  On October 3, 2003, the Montgomery County Police arrested Joshua Teague ('Teague') for allegedly assaulting Andrew Simpson after a DC 101 radio station event in 'Shantytown,' located in Silver Spring, Maryland.  According to the police report, the alleged assault was witnessed by Officer J. Gloss and Jeremie Simpson, a cousin of Andrew Simpson.

13.  Smith was retained by Teague on December 11, 2003. Smith had no prior relationship of any kind with Teague. Smith appeared with Teague at arraignment on December 12, 2003.  Teague told Smith that he was innocent and had not assaulted Andrew Simpson.  Throughout the time Smith represented Teague, Teague maintained his innocence and refused to plead guilty to any charges arising out of the alleged assault on Andrew Simpson.

14.  Smith received discovery from the Office of the State's Attorney on December 17, 2003.  As noted above, the police report listed Officer Gloss and Jeremie Simpson as eyewitnesses to the alleged assault on Andrew Simpson.

15.  Smith learned from Teague in mid-December 2003 that an individual named Ken Kelly had been videotaping the events at Shantytown on the night in question.  According to Teague, the video taken by Mr. Kelly showed an unprovoked assault by either Andrew or Jeremie Simpson on an individual named Gus Gamino.  Smith asked Teague to secure a copy of the videotape from Mr. Kelly.

16. Teague obtained a copy of the videotape from Mr. Kelly and gave it to Smith. After viewing the videotape, which showed an assault on Gamino, Smith told Teague to attempt to have Gamino file assault charges against Andrew Simpson. Teague later assured Smith that Gamino would seek criminal charges. No later than the week before Teague's trial, scheduled for February 18, 2004, Teague told Smith: 'that 100 percent that it would be done, so I never told him [Smith] that it wasn't done.' Although Smith believed Teague, Smith did not verify the information he learned from Teague with respect to Gamino pressing criminal charges against Andrew Simpson.

17. Smith contacted the Assistant State's Attorney assigned to the Teague prosecution to advise him of the existence of the tape. The prosecutor agreed to meet with Smith and Teague to view the videotape. The prosecutor also agreed to have Office Gloss present at the meeting.

18. At the February 12, 2004 meeting with the prosecutor (which Officer Gloss did not attend) Smith, Teague, and the prosecutor watched the tape of the assault on Gamino. The prosecutor agreed that Smith could use the videotape at Teague's trial, that he would stipulate to its admissibility and asked Smith for a copy. Smith had the videotape copied at a professional facility and personally delivered it to the Office of the State's Attorney on the morning of February 13, 2004.

19. Shortly after delivering the videotape, Smith received a telephone call from the prosecutor, who accused Smith of tampering with the videotape and withdrew his agreement as to the videotape's admissibility.

20. The Court has carefully viewed the videotape of the assault on Gamino. The Court has also carefully considered the testimony of Smith and the prosecutor. The Court finds, based on the credible evidence of record, that the prosecutor in fact accused Smith on February 13, 2004 of altering the videotape and that the prosecutor, when he leveled this charge, had no factual basis whatsoever for contending that the videotape had been altered by Smith or

anyone else. Smith was deeply angered and upset by the prosecutor's charge that he altered the videotape.

21. The prosecutor called Smith at 11:00 a.m. on February 17, 2004 to advise Smith he was seeking an emergency hearing before the Administrative Judge with respect to his contention Smith had altered the videotape. The prosecutor also told Smith that he was taking this matter to Bar Counsel.

22. On February 17, 2004, at 2:17 p.m., Smith spoke with Teague. During this call, Smith asked Teague if Gamino had filed charges against Andrew Simpson. Teague told Smith that Gamino had in fact gone to the Commissioner.

23. On February 17, 2004, at 2:40 p.m., Smith, acting on the information he had received from Teague, attempted to call Andrew Simpson to advise him that assault charges had been leveled against him by Gamino. Smith's intent was to cause Andrew Simpson to assert his Fifth Amendment privilege when he appeared to testify at Teague's trial.

24. When Smith looked at the police report, he mistook Jeremie Simpson as the alleged victim of the assault by Teague. Smith compounded this error when he dialed the telephone number for Jeremie Simpson that was listed near his name on the first page of [the] police report. The call was answered by voice mail at the home of Simpson's parents. Smith made a split-second decision and left the following message on the voice mail recording: 'Yeah, this is Sergeant Graham with the Montgomery County Police, Seven Locks Station, trying to reach Jeremie Simpson because we have a warrant for his arrest for assault in the first degree committed on October third. Please give us a call ... to arrange a surrender. Thank you.'

25. Smith intentionally misrepresented his identity. He did so because he knew that the recipient of the message likely would ignore it if Smith used his true name. Smith wanted the recipient to call the police department number Smith left in the message to confirm the existence of the warrant 'so that when he came to court the next day he's under charges.' Smith used Sgt. Graham's name because

'he is the one who is behind the desk window almost every day of the week over there at Seven Locks where you surrender. . . .'

26. Smith made no effort to disguise his voice, which has a distinctive New England accent. Smith provided a telephone number Smith knew had been assigned to the Montgomery County Police Department. Smith wanted Simpson to call the Montgomery County Police to confirm that charges had been lodged against Simpson.

27. When he received the voice mail message, Jeremie Simpson called the prosecutor, who advised that there was no warrant for his arrest. Jeremie Simpson appeared for Teague's trial on February 18, 2004.

28. Jeremie Simpson's father also attempted to call the number Smith ha[d] left in the message. The number did not 'go through' so his father called the general Seven Locks number and left a message for Sgt. Graham.

29. On February 18, 2004, Smith and the prosecutor appeared before the Administrative Judge. The prosecutor told the Administrative Judge about the allegedly altered videotape and the voice mail message left by Smith. Teague's case was continued until April 26, 2004.

30. Smith met with the prosecutor shortly after the hearing before the Administrative Judge. The prosecutor advised Smith to 'get a lawyer.' Smith was arrested on February 19, 2004.

31. For reasons not entirely clear, Smith's criminal trial did not commence until April 26, 2005, which was 425 days after his arrest. After a bench trial, Smith was convicted of impersonating a police officer and intimidating a witness. Smith was acquitted of obstructing justice.

32. In an unreported opinion, Smith's convictions were reversed by the Court of Special Appeals on the ground that his Sixth Amendment right to a speedy trial had been violated. *Smith v. State,* No. 1437, September Term, 2005 (May 4, 2007). The State did not seek review in the Court of Appeals by way of a petition of certiorari. Thereafter,

the State's Attorney terminated the criminal action against Smith by way of a *nolle prosequi.* Maryland Rule 4–247.

33. Smith testified at the hearing before this Court, credibly, that he is genuinely remorseful for his actions. The Court finds that Smith appreciates the gravity of his improper conduct.

34. Smith has committed no ethical violations since February 17, 2004. The Court finds that Smith is highly unlikely to violate his ethical obligations in the future.

35. Smith's conduct in contacting Simpson was motivated, in part, by his anger at the prosecutor's allegation that Smith had tampered with the videotape. It also was motivated, in part, by his desire to represent his client, Teague, who steadfastly maintained his innocence, and Smith's honest belief that the prosecutor was acting unreasonably in his charging decisions.

36. Smith was not motivated by greed or a desire simply to win at any cost. Smith honestly believed, albeit incorrectly, that a warrant had been issued in connection with the assault on Gamino. Smith did not intend, subjectively, to dissuade Simpson from appearing for Teague's trial, although he appreciates that, objectively, his conduct likely could have caused that result."[4]

---

4. "[T]he [prohibited conduct] includes any attempt to corruptly influence ... or impede a witness in the discharge of his duty ... or impede the due administration of justice. [I]f the action of appellant was intended to influence ... or impede ... it would be prohibited conduct.... Because no direct or express evidence of appellant's intent to influence ... or impede ... a witness appears on the record, *we must look to the circumstances surrounding the incident and the natural and inevitable consequences of the action.*
  'The natural and inevitable consequence of an act may be considered in deducing the intention of the actor....'
  "We think ... that appellant's intent must be judged in light of the circumstances attending his actions, including their natural and inevitable consequences." (Emphasis added.) (Emphasis in original omitted.)
*Lee v. State,* 65 Md.App. 587, 592–94, 501 A.2d 495, 498 (1985) (quoting *Smith v. United States,* 274 F. 351 (C.A.8 1921)).

*"Conclusions of Law*

1. Smith did not intentionally misrepresent to Simpson that a warrant had been issued for Simpson's arrest. Although the statement was false, Smith acted under the mistaken (albeit woefully misguided) belief that Gamino ha[d] gone to the Commissioner, pressed charges, and that an arrest warrant for Simpson had been issued. Smith would not have made the telephone call had he not honestly believed the warrant had been issued. *See Attorney Grievance Comm['n] v. Jaseb,* 364 Md. 464, 476–77, [773 A.2d 516] (2001). Smith did intend that Simpson be unavailable to the State by reason of an invocation of Simpson's Fifth Amendment privilege against compelled self-incrimination. Smith did not intend to cause Simpson to fail to appear at Teague's trial. Smith's conduct did not cause Simpson to be unavailable, either by failing to appear or by invoking his Fifth Amendment rights.[5] Smith's conduct in this regard did not actually interfere with the administration of justice, the operation of the [Office of the State's Attorney], or actually obstruct the State's access to evidence. Hence, the foregoing conduct, standing alone, did not violate MRPC 8.4(a)-(d). *See Attorney Grievance Comm['n] v. Kalil,* [402] Md. [358], [ ], 936 A.2d 854 ([ ]2007). Nor did it violate MRPC 3.4.[6]

2. Smith, however, did deliberately and intentionally misrepresent his identity to Simpson when he left the voicemail message. His representation that he was Sgt. Graham was

---

5. In his Memorandum Opinion n. 6, Judge Rubin stated:

"Jeremie Simpson testified at Smith's criminal trial only after acknowledging, in response to questions by the prosecutor, that he remained at risk for being charged with a felony.... Hence, Simpson's legal jeopardy was not imaginary. Nevertheless, insofar as the record discloses, the State's Attorney ultimately elected not to prosecute Simpson for his role in the assault on Gamino...."

6. "The plain language of MRPC 3.4(a) requires actual obstruction. As written, the rule does not by its terms reach 'attempts.' ..."
Memorandum Opinion n. 8 citing *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); and *Attorney Grievance Comm'n v. Sheinbein,* 372 Md. 224, 261–84, 812 A.2d 981, 1002–16 (2002).

false and Smith knew it at the time of the call. *Attorney Grievance Comm['n] v. Siskind,* 401 Md. 41, 67–70[, 930 A.2d 328, 343–45] (2007). As Judge Harrell aptly noted in *Siskind,* 'words spoken by an attorney who knows they were untrue involves an inherent intent to deceive.' *Id.* at 70[, 930 A.2d at 345]. Hence, Smith's conduct in falsely representing himself as a police officer violated MRPC 8.4(a), (c) and (d). *Attorney Grievance Comm['n] v. Harris,* [403] Md. [142], [939 A.2d 732] [ ]([ ]2008)]; *Attorney Grievance Comm['n] v. Hekyong Pak,* 400 Md. 567, 606–08[, 929 A.2d 546, 569–70] (2007); *Attorney Grievance Comm['n] v. Sweitzer,* 395 Md. 586, 594[, 911 A.2d 440, 445] (2006); *Attorney Grievance Comm['n] v. White,* 354 Md. 346, 363–64[, 731 A.2d 447, 456–57] (1999). *Cf. Attorney Grievance Comm['n] v. Floyd,* 400 Md. 236, 251–54[, 929 A.2d 61, 69–71] (2007)[,] (intentional concealment of a material fact may violate MRPC Rule 8.4(c) if there is an intent to mislead).

3. With respect to MRPC 8.4(b), the Court concludes that Smith committed a criminal act that reflects adversely on his fitness as a lawyer. The 'something more' tying the criminal act to fitness to practice law that was missing in *Attorney Grievance Comm['n] v. Post,* 350 Md. 85, 95–98[, 710 A.2d 935, 939–41] (1998), is satisfied in this case because of the false representation by Smith to a State's trial witness in a criminal prosecution that he was a police officer. [Md.Code (2003),] § 3–502 of the Public Safety Article ('A person may not, with fraudulent design . . . falsely represent that the person is a police officer.'); [Md. Code (2002),] § 9–305 of the Criminal Law Article ('A person may not, by . . . corrupt means, to try to influence . . . [ ] a witness.'). *See Attorney Grievance Comm['n] v. White,* 354 Md. at 362–63[, 731 A.2d at 456–57]. *Cf. Attorney Grievance Comm['n] v. Mininsohn,* 380 Md. 536, 566–68[, 846 A.2d 353, 371–72] (2004) (distinguishing *Post*). The fact that Smith's criminal convictions were reversed does not preclude finding a violation of MRPC 8.4(b), or any other applicable provisions of the MRPC. *Attorney Griev-*

*ance Comm['n] v. Garland,* 345 Md. 383, 394–95[, 692 A.2d 465, 470–71] (1997)."

*"Mitigation*

"The Court finds that Smith has proven the following mitigating factors by a preponderance of the credible evidence. *See Attorney Grievance Comm['n] v. Lawson,* 401 Md. 536, 585–86[, 933 A.2d 842, 870] (2007); *Attorney Grievance Comm['n] v. Floyd,* 400 Md. 236, 258–59[, 929 A.2d 61, 73–74] (2007); *Sweitzer,* 395 Md. at 598–99, 911 A.2d at 447–48; *Attorney Grievance Comm['n] v. Guida,* 391 Md. 33, 55–56[, 891 A.2d 1085, 1098–99] (2006); *Attorney Grievance Comm['n] v. Glenn,* 341 Md. 448, 488–89[, 671 A.2d 463, 482–83] (1996):

1. Smith has no prior disciplinary record.

2. Smith and his counsel cooperated fully and completely with Bar Counsel and this Court.

3. Smith is genuinely remorseful and appreciates both the wrongful nature of his conduct as well as the gravity.

4. Smith did not seek or obtain any personal benefit by reason of the misconduct. His motive, albeit misguided, was to serve the interests of his client, whom he genuinely believed was not receiving fair treatment.

5. Smith enjoys an excellent reputation in the legal community for honesty, integrity, professional competence, reliability, and client satisfaction.

6. The misconduct was of extremely short duration and did not result in any actual harm to the administration of justice. There is no credible evidence of risk to the public in allowing Smith to continue to practice law.

7. Throughout his entire legal career, Smith has volunteered his time and legal skills to many non-profit and public causes for the betterment of his community, as well as performing *pro bono* work for individual clients and the bar as a whole.

8. The conduct in issue occurred on February 17, 2004, nearly four years ago. Hence, it is relatively remote in

time. There is no evidence of any misconduct after February 17, 2004. Smith's continuing to practice law presents no credible risk of harm to the public.

9. Smith ... suffered the humiliating consequences of a very public criminal prosecution. Despite the publicity on television and in newspapers resulting from Smith's criminal prosecution, Smith remains highly regarded in the Montgomery County legal community.

10. The Court finds that the 'trigger' or the 'root cause' for Smith's conduct was the intemperate accusation leveled against him by the prosecutor—that Smith had altered the videotape showing the violent beating of Gamino by Andrew Simpson. *See Attorney Grievance Comm['n] v. Vanderlinde,* 364 Md. 376, 413–14[, 773 A.2d 463, 484–86] (2001). *Cf. Attorney Grievance Comm['n] v. Tomaino,* 362 Md. 483, 498[, 765 A.2d 653, 661–62] (2001) ('the state of mind of the attorney at the time of the violation [is] important in the context of mitigation.'); *Attorney Grievance Comm['n] v. Sheridan,* 357 Md. 1, 29[, 741 A.2d 1143, 1158] (1999) ('We agree with Respondent that his state of mind at the time he violated the ethical rules is important in the context of mitigation.')." (Some alterations in original.) (Some footnotes omitted.)

## Discussion

### A. Standard of Review

It is clear that "[t]his court has original and complete jurisdiction over attorney disciplinary proceedings." *Attorney Grievance Comm'n v. Tayback,* 378 Md. 578, 585, 837 A.2d 158, 162 (2003); *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 293, 818 A.2d 219, 230 (2003); *Attorney Grievance Comm'n v. Harris,* 371 Md. 510, 539–40, 810 A.2d 457, 474–75 (2002); *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176, 189, 711 A.2d 193, 200 (1998); *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,*

337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992). Under our independent review of the record, we must determine whether the findings of the hearing judge are based on clear and convincing evidence. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002); *Attorney Grievance Comm'n v. Alison,* 349 Md. 623, 629, 709 A.2d 1212, 1214–15 (1998) (quoting *Attorney Grievance Comm'n v. Kemp,* 335 Md. 1, 9, 641 A.2d 510, 514 (1994)). We conduct an independent review of the record, accepting the hearing judge's findings of fact unless clearly erroneous. *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763 (2002); *Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 288, 793 A.2d 535, 542 (2002); *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997). We review the conclusions of law essentially *de novo. Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 428, 795 A.2d 706, 711 (2002). Accordingly, this Court has the ultimate authority to decide whether a lawyer has violated the professional rules. *Garland,* 345 Md. at 392, 692 A.2d at 469; *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995).

In *Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003), we stated:

" 'It is well established that "[t]his Court has original jurisdiction over attorney disciplinary proceedings." *Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 427, 795 A.2d 706, 710–11 (2002) (citing *Attorney Grievance Comm'n v. Snyder,* 368 Md. 242, 253, 793 A.2d 515, 521 (2002)); *Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 388, 784 A.2d 516, 523 (2001); *Attorney Grievance Comm'n v. Gavin,* 350 Md. 176, 189, 711 A.2d 193, 200 (1998); *Attorney Grievance Comm'n v. Adams,* 349 Md. 86, 93, 706 A.2d 1080, 1083 (1998); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Powell,* 328 Md.

276, 287, 614 A.2d 102, 108 (1992).... Furthermore, "[a]s the Court of original and complete jurisdiction for attorney disciplinary proceedings in Maryland, we conduct an independent review of the record." *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 763 (2002) (quoting *Snyder,* 368 Md. at 253, 793 A.2d at 521 (citing *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997))).

" 'In our review of the record, "[t]he hearing judge's findings of fact will be accepted unless we determine that they are clearly erroneous." *Garfield,* 369 Md. at 97, 797 A.2d at 763 (quoting *Snyder,* 368 Md. at 253, 793 A.2d at 521 (citations omitted)). *See also Dunietz,* 368 Md. at 427–28, 795 A.2d at 711 ("The hearing judge's findings of fact 'are *prima facie* correct and will not be disturbed unless clearly erroneous.' ") (quoting *Attorney Grievance Comm'n v. Zdravkovich,* 362 Md. 1, 21, 762 A.2d 950, 960–61 (2000)); *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002) ("Factual findings of the hearing judge will not be disturbed if they are based on clear and convincing evidence."). We recently reiterated the definition of clear and convincing evidence in *Harris,* 366 Md. at 389, 784 A.2d at 523 (quoting *Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 79, 753 A.2d 17, 29 (2000)), when we said:

"The requirement of 'clear and convincing' or 'satisfactory' evidence does not call for 'unanswerable' or 'conclusive' evidence. The quality of proof, to be clear and convincing, has also been said to be somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it *must be more than a mere preponderance but not beyond a reasonable doubt.* It has also been said that the term 'clear and convincing' evidence means that the witnesses to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details hereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without

hesitancy, of the truth of the precise facts in issue. Whether evidence is *clear and convincing* requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence." [Emphasis added.]

[*Mooney,*] 359 Md. at 79, 753 A.2d at 29 (quoting *Berkey v. Delia,* 287 Md. 302, 320, 413 A.2d 170, 178 (1980) (citing *Whittington v. State,* 8 Md.App. 676, 679 n. 3, 262 A.2d 75, 77 n. 3 (1970))). We recently explained in *Dunietz* that "[a]s to the hearing judge's conclusions of law, 'our consideration is essentially *de novo.*'" *Dunietz,* 368 Md. at 428, 795 A.2d at 711 (quoting *Attorney Grievance Comm'n v. Thompson,* 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (quoting *Attorney Grievance Comm'n v.Briscoe,* 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000)))."

*Seiden,* 373 Md. at 414–16, 818 A.2d at 1111–12 (quoting *Harris,* 371 Md. at 539–40, 810 A.2d. at 474–75).

As indicated, respondent filed exceptions to the hearing judge's Findings of Fact and Conclusions of Law. We shall adopt Judge Rubin's findings and conclusions and hold that they are not clearly erroneous and are based on clear and convincing evidence.

## B. *Respondent's Exceptions*

█ Respondent makes two specific exceptions to the hearing judge's Conclusions of Law and they only related to MRPC 8.4(b)-(d). This Court is not persuaded.

Smith's Exceptions in relevant part state:

"Respondent excepts to the Court's Conclusions of Law with respect to ¶ 2 and ¶ 3. Respondent submits that the Court's finding that his conduct was criminal is a conclusion unsupported by the facts of the case.... Respondent excepts to the Court's conclusion that he violated MR[PC] 8.4(a), (b), (c) and (d). As his grounds, Respondent submits that although he represented his identity to the witness to be that of Sergeant Graham when he left the voicemail message, he was not attempting to achieve an untoward or

wrongful purpose. Respondent testified that he did not attempt to disguise his voice when he left message. . . . He testified that he wanted the witness to come to court under charges the following day. . . . Respondent did not *intend* for the witness not to appear in Court. . . . Respondent *intended* that the witness appear for Court, be advised of his rights to have a lawyer, that he was under charges and would incriminate him[self] and be unavailable to testify until his case was resolved resulting in Respondent's case getting postponed and probably put in a better posture. . . . He did not *intend* to keep the witness from appearing in Court. . . .

"Respondent's attempt to advise the witness of the pendency of a charge against him for assault may have been ill conceived but was not criminal. Respondent provided a telephone number which had been assigned to the Montgomery County Police Department. He left the name of a readily identifiable police officer which could be confirmed by a single return telephone call. The Court correctly found that Respondent did not *intentionally* misrepresent to the witness that a warrant had been issued for his arrest. Respondent mistakenly believed that the warrant had been issued for his arrest. As the Court noted, Respondent would not have made the phone call had he not *honestly believed* that the warrant had been issued. Respondent's actions were not *intended* to mislead anyone that a witness should not appear for court. Respondent knew that the witness had established a relationship with the prosecuting attorney. Respondent did nothing to impair the relationship or availability of any witness in the case of *State of Maryland v. Joshua Teague.* Respondent's conduct stemmed from his desire to insure that the witness would take action to contact law enforcement officers to confirm and corroborate the existence of a charging document. As such, Respondent *intended* to achieve a valid and legitimate purpose.

. . .

"As noted . . . respondent *did not act with any wrongful or dishonest intent.* He did not *intend* to violate any Rule

of Professional Conduct. Respondent did not *intend* to engage in any conduct involving dishonesty, fraud, deceit or misrepresentation and did not *intend* to engage in conduct prejudicial to the administration of justice. The Court properly noted that Respondent's *actions were not motivated by greed or a desire to win at any cost....* Respondent *honestly believed* that a warrant had been issued in connection with the assault by the witness. Respondent did not *intend,* subjectively, to dissuade the witness from appearing for trial.

. . .

"Respondent's conduct was motivated, in part, by his anger at the prosecutor's allegation that Respondent had tampered with the videotape. It also was motivated, in part, by his desire to represent his client who steadfastly maintained his innocence, and Respondent's *honest belief* that the prosecutor was acting unreasonably in his charging decisions...." (Emphasis added.)

In his Respondent's Exceptions to the Memorandum Opinion and Recommendations, Smith specifically admits his violations of MRPC 8.4(b)-(d). Regardless of whether respondent's conduct was successfully prosecuted criminally[7] does not derogate the fact that the violation occurred, as noted *supra.* Respondent's exceptions are denied.

## Sanction

We shall now consider the appropriate sanction for respondent's misconduct. In the case at bar, the Attorney Grievance Commission, through Bar Counsel, recommends that respondent be disbarred.

---

7. Smith's criminal trial commenced April 26, 2005, 425 days after his arrest. After a bench trial, on April 27, 2005, Smith was convicted of impersonating a police officer and intimidating a witness. Smith was acquitted of obstructing justice.

Smith's convictions were reversed in an unreported opinion by the Court of Special Appeals on the ground that his Sixth Amendment right to a speedy trial had been violated. *Smith v. State,* No. 1437, September Term, 2005 (May 4, 2007).

For the following reasons, petitioner recommends disbarment:

"The trial court found that Respondent, with fraudulent design, falsely represented that he was a police officer, in violation of § 3–502 of the Public Safety Article, Maryland Code Annotated, and, by corrupt means, tried to influence a witness, in violation of § 9–305 of the Criminal Law Article, Maryland Code Annotated, and that Respondent thereby engaged in criminal conduct that adversely reflected on his honesty, trustworthiness or fitness as a lawyer in other respects, in violation of [ ] [MRPC] 8.4(b). The trial [hearing] Court also found that this same conduct involved dishonesty, fraud, deceit or misrepresentation, in violation of MRPC 8.4(c), and conduct prejudicial to the administration of justice, in violation of MRPC 8.4(d).... Disbarment is, therefore, the appropriate sanction."

Respondent asserts that no further sanctions or actions are required, citing in part the trial judge's "findings based on the evidence and the Rules:"

"Among these findings was that the Respondent and his family have already suffered public humiliation ... and that Respondent is extremely and sincerely remorseful[ ] for his conduct.... Moreover, Respondent received no personal gain or benefit from his actions.... Respondent's misconduct was, by the trial court's account, of extremely short duration and did not result in any harm to the administration of justice and there is no credible risk to the public in allowing Respondent to continue to practice law.... Respondent continues to enjoy an excellent reputation in the legal community for honesty, integrity, professional competence, reliability and client satisfaction.... He has no prior or subsequent disciplinary record....

"Based on [the trial judge's] findings and in consideration of the mitigating factors proven at trial, Respondent requests leniency with regard to his actions subject to this proceeding. Respondent hereby suggests that there is no basis for any additional sanctions or actions by this Court. As the evidence amply suggests, the Respondent poses no

danger to the public. As such, no further discipline is necessary or warranted."

The purpose of sanctions in attorney grievance matters is not to punish the attorney but to protect the public and to encourage other attorneys to comply with the Rules of Professional Conduct and to maintain the integrity of the legal profession. *Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 416, 800 A.2d 747, 754–55 (2002); *Attorney Grievance Comm'n v. Hess,* 352 Md. 438, 453, 722 A.2d 905, 913 (1999); *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997); *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 364, 624 A.2d 503, 513 (1993). *See Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994) ("[T]he public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated."); *see also Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 601, 667 A.2d 659, 665 (1995). The appropriate sanction to be imposed depends upon the particular facts and circumstances of each case. *Attorney Grievance Comm'n v. McClain,* 373 Md. 196, 211, 817 A.2d 218, 227 (2003); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 480 (1996); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 300, 614 A.2d 102, 114 (1992).

In *McClain, supra,* writing for the Court, Chief Judge Bell explained some of the considerations in regard to the sanction. He wrote:

"Relevant to the sanction decision is 'the nature and gravity of the violations and the intent with which they were committed.' Likewise relevant are the attorney's prior grievance history, whether there have been prior disciplinary proceedings, the nature of the misconduct involved in those proceedings and the nature of any sanctions imposed, as well as any facts in mitigation, the attorney's remorse for the misconduct, and the likelihood of the conduct being repeated. As to the latter, we have held that an attorney's voluntary termination of the charged misconduct, when

accompanied by an appreciation of the serious impropriety of that past conduct and remorse for it, may be evidence that the attorney will not again engage in such misconduct." (Citations omitted.)

*McClain,* 373 Md. at 211–12, 817 A.2d at 227–28.

■ In the case *sub judice,* the hearing court concluded, by clear and convincing evidence, that respondent intentionally represented himself to be Sergeant Graham, knowing full well that he was not. Smith, by his conduct, violated MRPC 8.4(a), (c) and (d). The evidence also demonstrated that Smith, having represented himself to a State's trial witness in a criminal prosecution as a police officer, violated MRPC 8.4(b). In his Memorandum Opinion n. 10, Judge Rubin stated: "Manifestly, Smith had numerous lawful remedies available to him, including meeting with the State's Attorney or the Deputy State's Attorney, as well as bringing the matter to the prompt attention of the Administrative Judge or the Trial Judge." We agree.

In *Attorney Grievance Comm'n v. Goodman,* 381 Md. 480, 850 A.2d 1157 (2004), Judge Greene stated for the Court:

"Here the evidence shows that Respondent intentionally and willfully pretended to be [someone else] . . . in order to represent [a client]. . . . The evidence was clear and convincing that Respondent intentionally committed [this] act[ ], and this conduct reflected on his honesty, trustworthiness, and fitness as a lawyer. . . .

. . .

"[The trial judge] found that Respondent engaged in intentional misconduct. That finding is supported by the record in this case. . . . As previously stated, 'intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.' . . . Only in the case of compelling extenuating circumstances 'will we even consider imposing less that the most severe sanction'. . . ."

*Goodman,* 381 Md. at 497–99, 850 A.2d at 1167–68. The mitigating factors presented in the case at bar provide the Court with compelling extenuating circumstances.

The record in this case is replete with mitigating evidence that induces us to impose a lesser sanction than the disbarment suggested by petitioner. This is the first disciplinary proceeding for respondent in more than 24 years of his practice of law. Since late 2003 to early 2004, the time of his actions, indictment, arrest and subsequent *nolle prosequi* of the charges that precipitated the case at bar, Mr. Smith has had no subsequent violation. He did not seek any personal benefit by reason of his actions. We are persuaded that Mr. Smith's actions will likely not be repeated and we find that he similarly poses no future risk of harm to the public.

In light of these findings and the mitigating circumstances in the case *sub judice,* we hold that a six (6) month suspension from the practice of law will suffice as an appropriate sanction for respondent's conduct, said suspension to commence 30 days after the filing of this opinion.

**IT IS SO ORDERED; RESPONDENT TO PAY ALL COSTS AS TAXED BY THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST PATRICK JOSEPH SMITH.**