Attorney Grievance Comm'n v. Sandra Lynn Reno, Misc. Docket AG No. 5, September Term, 2013

**ATTORNEY DISCIPLINE – SANCTIONS – SIX-MONTH SUSPENSION –** Court of Appeals suspended from practice of law in Maryland for six months lawyer who gave handgun to person who could not legally possess regulated firearm. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.4(d) (Conduct That Is Prejudicial to Administration of Justice) and 8.4(a) (Violating MLRPC).

Circuit Court for Cecil County
Case No. 07-C-13-000559

Argued: September 10, 2014

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 5

September Term, 2013

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SANDRA LYNN RENO

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Watts, J.

_____

Filed: November 19, 2014

"This attorney discipline proceeding concerns a Maryland lawyer who purchased and gave a handgun to a person who could not legally possess a regulated firearm." Attorney Grievance Comm'n v. Reno ("Reno I"), 436 Md. 504, 505, 83 A.3d 781, 781 (2014).

On January 24, 2014, in Reno I, id. at 511-12, 83 A.3d at 785, we held that Sandra Lynn Reno ("Reno"), Respondent, a member of the Bar of Maryland, violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice) and 8.4(a) (Violating the MLRPC) by circumventing the law and giving a handgun to a former client who, as Reno should have known, could not legally possess a regulated firearm, despite knowing that the Firearms Registration Section of the Maryland State Police had disapproved the former client's application to buy the same kind of handgun.[1]  "Instead of determining an appropriate sanction on our own initiative, we g[a]ve Reno and the [Attorney Grievance] Commission [("the Commission"), Petitioner,] the opportunity to recommend a sanction[.]"  Reno I, 436 Md. at 512, 83 A.3d at 786.

On September 10, 2014, we heard oral argument.  For the below reasons, we suspend Reno from the practice of law in Maryland for six months.

## BACKGROUND

### Hearing Judge's Findings of Fact

In Reno I, 436 Md. at 506-08, 83 A.3d at 782-83, we stated:

---

[1]Reno I, 436 Md. at 505-06, 83 A.3d at 781-82, contains this attorney discipline proceeding's prior procedural background.

In her opinion, [the Honorable Jane Cairns Murray ("the hearing judge")] of the Circuit Court for Cecil County] found the following facts, which we summarize.

On December 19, 1991, this Court admitted Reno to the Bar of Maryland. In 2002, Reno began practicing criminal law at the Law Offices of Jim Baldwin.

On or about February 18, 2004, Cortney Stevens [("Stevens")] was convicted of possession of a controlled dangerous substance other than marijuana. In 2005, Reno met Stevens and later served as his lawyer. In 2008, while represented by someone other than Reno, Stevens was convicted of making a false prescription. Sometime before 2010, Stevens informed Reno that he had a prior drug charge for which he received probation before judgment. Stevens also informed Reno of a prescription forgery charge.

On or about September 14, 2010, Stevens visited Chesapeake Guns, a firearms store in Stevensville. At Chesapeake Guns, Stevens completed an application to buy a .45 caliber 1911 handgun. In a letter dated September 22, 2010, the Firearms Registration Section of the Maryland State Police informed Stevens that his application had been disapproved. The letter did not include the reasons for Stevens's application's disapproval. Reno learned of the letter and testified that she thought that the reason for Stevens's application's disapproval was a minor issue such as a failure by Stevens to have paid a fine.

On November 6, 2010, Reno visited On Target, a firearms store in Severn. At On Target, Reno obtained a .45 caliber 1911 handgun ("the handgun"). Reno immediately transported the handgun to Stevens's place of employment, where she gave the handgun to Stevens.

On November 16, 2010, at her home, Reno was visited by Corporal Marcus Jackson and Senior Trooper First Class Ryan List ("the troopers") of the Gun Enforcement Unit of the Maryland State Police. The troopers told Reno that they were conducting a handgun investigation. Reno escorted the troopers to Stevens's home and retrieved the handgun, which the troopers confiscated.

Sometime between November 4, 2011, and November 16, 2011, Reno learned that the State had charged her with violating the statute that is currently codified at [Md. Code Ann., Pub. Safety (2003, 2011 Repl. Vol., 2013 Supp.) ("PS")] § 5-144. On February 28, 2012, in the Circuit Court for Anne Arundel County, Reno pled not guilty and joined [an] agreed statement

of facts.  The Circuit Court for Anne Arundel County granted Reno probation before judgment.  Sometime before October 21, 2013, the records of Reno's criminal case were expunged.

* * *

Reno should have known that Stevens was a prohibited person, but it was not established by clear and convincing evidence that Reno in fact knew that Stevens was a prohibited person.

(Brackets, emphasis, and some internal quotation marks omitted).

The hearing judge found that Reno: (1) has never before received attorney discipline; (2) reported herself to the Commission; (3) is "honest[] and forthright[]";[2] (4) suffered "great embarrassment"; and (5) withdrew her application to be a judge of the District Court of Maryland, sitting in Queen Anne's County.

## Reno I

In Reno I, 436 Md. at 509, 510, 511-12, 83 A.3d at 784-85, we determined that:

As the hearing judge found, it is undisputed that Reno gave the handgun (*i.e.*, a regulated firearm)[3] to Stevens, who had been convicted of disqualifying crimes.[4]

* * *

Reno violated PS § 5-134(b)(2), a regulatory provision, which states that: "A

---

[2]The hearing judge also found that Reno has provided *pro bono* legal services.

[3]"'Regulated firearm' means[ ] a handgun[.]"  PS § 5-101(r)(1).

[4]Specifically, Stevens was convicted of two disqualifying crimes: (1) possession of a controlled dangerous substance other than marijuana; and (2) making a false prescription. *See* PS § 5-101(g) ("'Disqualifying crime' means: (1) a crime of violence; (2) a violation classified as a felony in the State; or (3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years."  (Paragraph breaks omitted)); Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CL") § 5-601(c)(1) (Possession of a controlled dangerous substance other than marijuana is a misdemeanor that is punishable by up to four years of incarceration.); CL §§ 5-606(a), 5-607(a) (Making a false prescription is a felony that is at least punishable by up to five years of incarceration.).

... person may not ... transfer a regulated firearm to a ... transferee who the ... person knows or has reasonable cause to believe ... has been convicted of a disqualifying crime[.]"

\* \* \*

Reno violated MLRPC 8.4(d), which provides: "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice[.]" . . . Reno knew that: (1) Stevens had applied to buy a .45 caliber 1911 handgun; and (2) the Firearms Registration Section of the Maryland State Police disapproved Stevens's application. Nonetheless, Reno gave Stevens a handgun of the exact type for which he had applied. Even if (as the hearing judge found) Reno thought that the reason for Stevens's application's disapproval was a minor issue such as a failure by Stevens to have paid a fine, Reno nonetheless circumvented the law by giving the handgun to Stevens.

(Alterations, footnotes, and some ellipses in original) (emphasis, one footnote, internal quotation marks, and some brackets omitted).

## DISCUSSION

The Commission recommends that we suspend Reno from the practice of law in Maryland for six months. Reno recommends that we reprimand her.

In Attorney Grievance Comm'n v. McDowell, 439 Md. 26, 45-46, 93 A.3d 711, 722-23 (2014), this Court stated:

This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court protects the public by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.

Aggravating factors include: (a) prior attorney discipline; (b) a

dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple violations of the MLRPC; (e) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court; (f) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (g) refusal to acknowledge the wrongful nature of the misconduct; (h) vulnerability of the victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; and (k) illegal conduct, including that involving the use of controlled substances.

Mitigating factors include: (a) the absence of prior attorney discipline; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith efforts to make restitution or to rectify consequences of the misconduct; (e) full and free disclosure to the Commission or a cooperative attitude toward the attorney discipline proceeding; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) a mental disability or chemical dependency including alcoholism or drug abuse where: (1) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of the misconduct is unlikely; (j) delay in the attorney discipline proceeding; (k) the imposition of other penalties or sanctions; (l) remorse; and (m) remoteness of prior violations of the MLRPC.

(Brackets, citations, footnote, and internal quotation marks omitted).

In Attorney Grievance Comm'n v. Howell, 434 Md. 1, 19, 8, 15, 73 A.3d 202, 213, 207, 211 (2013), this Court suspended from the practice of law in Maryland for one year a lawyer who violated MLRPC 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice). The lawyer forwarded to an inmate a letter from another inmate by secretly taping the letter to docket entries. See id. at 8, 73 A.3d at 206-07. The lawyer "knew [that] it was against prison policy to forward mail from inmate to inmate"; thus, the lawyer

"circumvent[ed] the law." Id. at 8, 73 A.3d at 206-07. The lawyer's misconduct had the potential to cause injury. See id. at 17, 73 A.3d at 212. This Court did not note any aggravating factors or mitigating factors.

Here, as to the duty violated, Reno violated MLRPC 8.4(d) by giving the handgun to Stevens, who could not legally possess a regulated firearm. As to Reno's mental state, Reno knew that the Firearms Registration Section of the Maryland State Police had disapproved Stevens's application to buy a handgun. From this information, Reno should have known that Stevens could not legally possess a regulated firearm. Nonetheless, Reno intentionally gave the same kind of handgun to Stevens.[5] Reno's misconduct—giving a deadly weapon to a convicted felon—had the potential to cause injury.[6]

---

[5]We reject Reno's contention that her mental state was one of negligence. Reno did not carelessly leave the handgun unattended, thus inadvertently allowing Stevens to obtain it; instead, Reno intentionally gave the handgun to Stevens, despite knowing that the Firearms Registration Section of the Maryland State Police had disapproved Stevens's application to buy the same kind of handgun.

Also, although the hearing judge found that Reno thought that the reason for Stevens's application's disapproval was "a minor issue such as a failure [by] Stevens to have paid a fine[,]" we observe that no provision of Title 5 (Firearms) of the Public Safety Article prohibits the possession of a regulated firearm by a person who has failed to pay a fine.

Reno raises red herrings in pointing out that the record does not indicate that she intended to: (1) aid in the commission of a crime; (2) transfer ownership of the handgun to Stevens; or (3) allow Stevens to use the handgun. None of these circumstances change the fact that, despite knowing that the Firearms Registration Section of the Maryland State Police had disapproved Stevens's application to buy the same kind of handgun, Reno intentionally gave the handgun to Stevens, whom she should have known could not legally possess a regulated firearm.

[6]Reno is incorrect in asserting that the hearing judge did not find that a handgun is dangerous and could be used to aid in the commission of a crime. The hearing judge explicitly found (and common sense dictates) that it is "'potential[ly] danger[ous]'" to give a handgun to someone who cannot legally possess a regulated firearm.

- 6 -

We note two aggravating factors: (1) substantial experience in the practice of law, as Reno has been a member of the Bar of Maryland for almost twenty-three years and a criminal defense attorney for more than twelve years;[7] and (2) illegal conduct, as Reno violated PS § 5-134(b)(2).

We note three mitigating factors: (1) the absence of prior attorney discipline; (2) full and free disclosure to the Commission, as Reno reported herself to the Commission; and (3) character, as the hearing judge found that Reno is "honest[] and forthright[.]"

We reject the Commission's curious assertion that Reno's misconduct is mitigated by the absence of a conviction and the expungement of the records of Reno's criminal case. These circumstances do not correspond to any of the mitigating factors that this Court has identified in its attorney discipline jurisprudence. See McDowell, 439 Md. at 46, 93 A.3d at 723. Indeed, in an attorney discipline proceeding, this Court considers a lawyer's misconduct, regardless of the disposition of any criminal case that arises out of the lawyer's misconduct. See Howell, 434 Md. at 7 n.7, 73 A.3d at 206 n.7 ("Absence of criminal prosecution does not preclude violations of the MLRPC." (Citation omitted)).

We find no merit in Reno's contention that her misconduct is mitigated by the imposition of other penalties in the form of embarrassment and the "scar[r]ing of [her] rep[u]tation[.]" Generally, embarrassment and diminished reputation are not mitigating

---

[7]We correct the parties' misconception that substantial experience in the practice of law is a mitigating factor where a lawyer has never before received attorney discipline. "[S]ubstantial experience in the practice of law" is an aggravating factor, whereas "the absence of prior attorney discipline" is a mitigating factor. McDowell, 439 Md. at 46, 93 A.3d at 723 (brackets and citations omitted).

factors. See Attorney Grievance Comm'n v. Goldsborough, 330 Md. 342, 362, 624 A.2d 503, 512 (1993) (This Court rejected a lawyer's contention that his misconduct was mitigated by "media attention[, which] already 'ruined' his reputation"; this Court stated: "Media attention, however embarrassing or humiliating to the attorney, is no substitute for the responsibility of this Court to enforce the [MLRPC]. Our role in these proceedings, unpleasant and difficult as it may sometimes be, is one of utmost importance, and we will not shirk it or delegate it to the media or public opinion.").[8] Indeed, as Chief Judge Barbera aptly pointed out at oral argument, if embarrassment or stress were definitively mitigating factors, they would apply in nearly every attorney discipline proceeding; "[t]hat doesn't stop us from imposing what we believe is the appropriate sanction[.]"

Similarly, we find no basis for Reno's contention that her misconduct is mitigated by the imposition of another penalty in the form of withdrawing her application to be a judge. In Maryland, the judicial selection process is rigorous, and consists of being interviewed and rated by bar associations, being nominated by the Judicial Nominating Commission, and being appointed by the Governor; thus, there is no guarantee that Reno

---

[8]This Court has considered adverse media coverage to be a mitigating factor where the adverse media coverage caused other, more tangible penalties. See, e.g., McDowell, 439 Md. at 47, 93 A.3d at 724 (This Court held that a lawyer's misconduct was mitigated by "other penalties in the form of being sued, receiving adverse media coverage, voluntarily stopping the active practice of law, and withdrawing from the [the lawyer's law firm], which no longer [bore the lawyer]'s name[.]"); Attorney Grievance Comm'n v. Geesing, 436 Md. 56, 68, 80 A.3d 718, 725 (2013) (This Court held that a lawyer's misconduct was mitigated by the "imposition of other penalties, [as the lawyer]'s misconduct: . . . ([1]) caused significant media coverage; ([2]) caused three mortgagees . . . to end [the lawyer's law firm]'s representation; and ([3]) prompted [the lawyer] to encourage his partners to remove his name from [the law firm]'s title.").

- 8 -

would have become a judge but for her misconduct.

Additionally, we reject Reno's contention that her misconduct is mitigated by four factors that the hearing judge did not find: (1) the absence of a selfish motive; (2) timely good faith efforts to rectify the consequences of the misconduct; (3) delay in the attorney discipline proceeding; and (4) unlikelihood of repetition of misconduct. The hearing judge's finding that Reno did not violate MLRPC 8.4(b) (Criminal Act) or MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation) does not establish that Reno lacked a selfish motive.[9] Reno's self-reporting to the Commission establishes full and free disclosure to the Commission, not timely good faith efforts to rectify the consequences of Reno's misconduct.[10] The hearing judge did not find that there was any delay in this

---

[9]For two reasons, we also reject Reno's contention that she lacked a selfish motive based on her testimony that she gave the handgun to Stevens because she wanted to avoid injuring herself or her children. First, the hearing judge did not explicitly credit that part of Reno's testimony. Second, as the Commission points out, the hearing judge's findings of fact lead to the conclusion that Reno had a selfish motive. Specifically, the hearing judge found that, after the Firearms Registration Section of the Maryland State Police disapproved Stevens's application to buy a handgun, Reno gave the same kind of handgun to Stevens—whom Reno was dating at the time. The hearing judge's findings of fact give rise to the inference that Reno's transfer of the handgun was a favor for Stevens, her significant other. That said, given that the hearing judge did not find that Reno had (or lacked) a selfish motive, we do not resolve this factual matter in either party's favor.

[10]Put plainly, Reno's contention that she made timely good faith efforts to rectify the consequences of her misconduct by retrieving the handgun for the troopers is frivolous. Reno did not initiate contact with the troopers; instead, on their own initiative, the troopers visited Reno at her home and told Reno that they were conducting a handgun investigation. Then and only then did Reno escort the troopers to Stevens's home and retrieve the handgun, which the troopers confiscated. In other words, Reno cooperated with law enforcement only after being told of an ongoing handgun investigation, which Reno did not cause to occur. At no point did Reno report herself to law enforcement.

attorney discipline proceeding or that Reno is unlikely to repeat her misconduct.[11]

We agree with the Commission that the appropriate sanction for Reno's misconduct is a six-month suspension from the practice of law in Maryland. Reno knew that the Firearms Registration Section of the Maryland State Police had disapproved Stevens's application to buy a handgun. Despite this knowledge, Reno intentionally gave the same kind of handgun to Stevens, who, as Reno should have known, could not legally possess a regulated firearm. And, as the hearing judge found, there was a "potential danger" in giving a deadly weapon to a convicted felon. Reno's misconduct is aggravated by substantial experience in the practice of law and unlawful conduct. Reno's misconduct is mitigated by the absence of prior attorney discipline, full and free disclosure to the Commission, and a finding of character for honesty.[12]

---

[11]In its written recommendation, Bar Counsel states that Reno's misconduct is "unlikely to be repeated"; however, the hearing judge made no such finding.

[12]Although we agree with the Commission that the appropriate sanction for Reno's misconduct is a six-month suspension from the practice of law in Maryland, we are unpersuaded by the Commission's reliance on Attorney Grievance Comm'n v. Smith, 405 Md. 107, 130, 129, 950 A.2d 101, 114, 113 (2008), in which this Court suspended from the practice of law in Maryland for six months a lawyer who violated MLRPC 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation) and 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice) by intentionally falsely representing himself to be a law enforcement officer. To liken Smith to this attorney discipline proceeding is to compare apples to oranges. In Smith, the respondent's misconduct was comprised of a statement, which constituted a false representation; by contrast, Reno's misconduct is comprised of an act, which constituted a circumvention of the law. We infer that the Commission relies on Smith because Smith included the same sanction (*i.e.*, a six-month suspension) that the Commission recommends here. Although this Court strives for consistency in attorney discipline proceedings, this Court need not rely on a case that includes the same sanction that this Court imposes. We decline the Commission's invitation to consider Smith in our determination of the appropriate sanction for Reno's misconduct.

We agree with the Commission that Reno's misconduct is similar to, but not as egregious as, the misconduct of the lawyer in Howell, 434 Md. 1, 73 A.3d 202. Like the lawyer in Howell, id. at 8, 17, 73 A.3d at 206-07, 212, Reno circumvented the law by intentionally giving an item to someone who could not legally possess the item, thus creating the potential for injury. In contrast to the lawyer in Howell, id. at 8, 15, 73 A.3d at 207, 211, Reno did not violate MLRPC 8.4(b) (Criminal Act) or 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation). Thus, Reno's misconduct does not warrant the one-year suspension that this Court imposed in Howell, id. at 19, 73 A.3d at 213.

Reprimanding Reno would not suffice to protect the public and deter other lawyers from similar misconduct. Reno potentially endangered the public by giving a deadly weapon to a convicted felon. Although the hearing judge found that Reno did not know that Stevens could not legally possess a regulated firearm, the hearing judge found that Reno should have known. Despite knowing that the Firearms Registration Section of the Maryland State Police had disapproved Stevens's application to buy a handgun, Reno circumvented the law by intentionally giving the same kind of handgun to Stevens, who, as Reno should have known, could not legally possess a regulated firearm. We cannot take lightly a lawyer's failure to obey the law that the lawyer swore to uphold. Nor can we ignore the potential for danger that Reno caused.

For the above reasons, we suspend Reno from the practice of law in Maryland for six months. The suspension will begin thirty days after the date on which this opinion is filed.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SANDRA LYNN RENO.**