*Attorney Grievance Commission v. Dana Andrew Paul*, Misc. Docket AG No. 4, September Term, 2017.  Opinion by Getty, J.

**ATTORNEY DISCIPLINE — SANCTIONS — SUSPENSION —** The Court of Appeals suspended for thirty days an attorney who was convicted of traffic offenses stemming from a "road rage" incident.  These actions violated the Maryland Lawyers' Rules of Professional Conduct Rules 8.4(a), (b), and (d) (Misconduct).

Circuit Court for Anne Arundel County
Case No.: C-02-CV-17-000791
Argued: March 5, 2018

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 4

September Term, 2017

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

DANA ANDREW PAUL

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

Opinion by Getty, J.

Filed: June 22, 2018

This attorney discipline case involves an attorney who was convicted of traffic offenses stemming from a "road rage" incident spanning two Maryland counties and, in a separate matter, was involved in contentious litigation. On March 16, 2017, the Attorney Grievance Commission of Maryland ("Bar Counsel") filed a Petition for Disciplinary or Remedial Action ("Petition") alleging that Dana A. Paul ("Paul") had violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").[1] The Petition alleged that Paul had violated the following rules of the MLRPC: 3.1 (Meritorious Claims and Contentions); 8.2(a) (Judicial and Legal Officials); and 8.4(a), (b), (c), and (d) (Misconduct).

By Order dated March 20, 2017, we designated Judge Michele D. Jaklitsch ("the hearing judge") of the Circuit Court for Anne Arundel County to conduct an evidentiary hearing concerning the alleged violations and to provide findings of fact and recommended conclusions of law. Md. Rule 19-722(a). After receiving service on May 15, 2017, Paul filed a motion to stay a portion of the proceedings, which the hearing judge denied. The evidentiary hearing was scheduled to begin on September 11, 2017 and last through September 15, 2017.[2] The hearing ultimately took place on September 11, 12, and 14,

---

[1] Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and moved to Title 19, Chapter 300 of the Maryland Rules. This opinion refers to the MLRPC, not the MARPC, because all relevant conduct took place before July 1, 2016.

[2] On June 8, 2017, Bar Counsel filed a motion to extend time for hearing charges because the scheduled evidentiary hearing would conclude three days past the existing deadline. Md. Rule 19-727(e) ("Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the attorney of the order entered under Rule

2017 ("evidentiary hearing"). At the evidentiary hearing, the hearing judge considered the Petition, Paul's answer to the Petition, exhibits, witness testimony, and arguments of counsel.

The hearing judge issued a memorandum opinion on November 20, 2017 in which she made detailed findings of fact and recommended conclusions of law to this Court. In her recommended conclusions of law, the hearing judge found that Paul violated MLRPC 8.4(a) and (b) but concluded that Bar Counsel failed to prove by clear and convincing evidence that Paul violated MLRPC 3.1, 8.2(a), 8.4(c), and 8.4(d).

Both parties filed exceptions to the hearing judge's recommended conclusions of law. Bar Counsel excepts to the hearing judge's failure to conclude that Paul violated MLRPC 8.4(c) and 8.4(d). Bar Counsel recommends a sanction between a six-month suspension and an indefinite suspension. Paul's exceptions counter Bar Counsel's MLRPC 8.4(c) and 8.4(d) arguments, and he additionally opposes the imposition of costs. Paul, believing that he has faced unfair punishment already, argues that we need not impose a sanction. On March 5, 2018, we heard oral argument in this matter. For the reasons explained below, we suspend Paul for thirty days.

## BACKGROUND

We summarize the hearing judge's factual findings below. Since neither party filed exceptions to the hearing judge's factual findings, we deem those findings established. Md.

---

19-722."). We granted Bar Counsel's motion and ordered that the trial be allowed to extend until September 15, 2017.

2

Rule 19-741(b)(2)(A); *Attorney Grievance Comm'n v. McLaughlin*, 456 Md. 172, 190 (2017).

Paul was admitted to the Bar of this Court in June 2002. He is a full-time solo practitioner who has maintained a law office in Anne Arundel County.

This attorney grievance matter stems from two separate incidents. The first involved multiple confrontations between Paul and another driver which occurred in Wicomico and Dorchester counties. The second incident involved contentious litigation between Paul's client, David Burke, and opposing parties, some of whom were represented by Edward Kerman, Esquire.

*Traffic Incident*

The vehicular incident consisted of dangerous driving, a confrontation at a traffic light, and an accident that led to Paul being charged with multiple misdemeanors. Paul's behavior and recollections both before and at the district and circuit court proceedings are also at issue.

At the evidentiary hearing, Paul chose not to testify to this portion of Bar Counsel's allegations. Instead, Paul's deposition testimony, taken on August 24, 2017, and testimony during the District Court trial in the criminal case, held on August 20, 2013, was admitted into evidence.

According to Paul's version, in late afternoon on May 13, 2013, he was driving in the westbound lane on Route 50 in Wicomico County after attending an unrelated pretrial settlement conference held in Salisbury. Paul was traveling in the left lane when a black car in front of him slowed down and he observed that the female driver of the black car

3

was using her mobile phone. Paul moved to the right lane, beeped his horn while passing the black car, and then switched back to the left lane. During his deposition, Paul stated that he beeps his car horn every time he observes a driver using a mobile phone as a way of telling drivers to not use their phones while operating a vehicle.

The black car then sped past Paul, driving approximately seventy miles per hour and "cut him off while waiving her hand at him." Paul admitted that, after being cut off, he probably drove too close to the black car. The black car sped up and then braked suddenly, causing Paul to nearly collide with the back of the black car. At first, Paul believed that the black car's sudden stop may have been due to the driver's use of her cell phone. After three consecutive sudden stops though, Paul determined that the black car's driver was intentionally slamming on her brakes. Soon after, Paul and the black car approached a red traffic light, at which point Paul exited his vehicle and questioned the driver of the black car about why she was purposely decelerating suddenly. Paul stated that, while he was outside of his vehicle, the driver of the black car made faces at him, gave him the middle finger, stuck her tongue out at him, and generally acted belligerent. After the traffic light turned green, Paul moved to the right lane to "get away from the black car."

Minutes later, now in Dorchester County, Paul attempted to move from the right lane to the left lane. Although Paul witnessed a car approaching in the left lane from behind, he determined he had enough time and room to enter the left lane. While Paul was shifting lanes, the approaching car sped up and attempted to keep Paul from entering the left lane. Paul then realized that this car was the same black car from the earlier encounter. Paul alleged that the black car moved onto the shoulder located to the left of Paul's car and

4

sped up. Paul heard the rumble strip being driven on and saw the mud flap of the black car being torn off. Paul stated that the black car then attempted to merge into the left lane so he moved into the right lane. Paul was confident that the two vehicles did not make contact. The black car then slowed down and eventually entered the left lane.

Paul continued driving until he entered Easton and pulled off at a restaurant to use the restroom. When Paul entered the parking lot, a Maryland state trooper approached Paul and asked what had happened to his vehicle. Paul stated that nothing had occurred. The trooper pointed to paint on the side of Paul's vehicle, and Paul asserted that he did not know where the paint came from. The trooper then told Paul that the driver of the black car had reported that Paul hit her vehicle, which Paul immediately denied. After another trooper arrived, Paul was arrested and given traffic citations charging negligent driving, failure to stop after accident involving damages to attended vehicle/property, unsafe lane change, and failure to return to/remain at scene of accident involving attended vehicle/property damage.

On August 20, 2013, Paul arrived at the District Court of Maryland, sitting in Dorchester County, for his trial. Before the trial began, Paul spoke with the Assistant State's Attorney who was handling his case. When Paul communicated that he did not have an attorney for trial, the Assistant State's Attorney offered to agree to a continuance. After the conversation, Paul hired an attorney in the courthouse hallway to represent him. When the trial began, Paul requested a continuance. Instead of agreeing to the continuance, the Assistant State's Attorney stated that she could not consent to the continuance because

5

two witnesses who had driven multiple hours were present. The district court judge denied Paul's request, and the trial proceeded.

During the trial, the driver of the black car, Jasmine Taylor, recalled the details of May 13, 2013 differently than Paul's trial testimony. Taylor testified that Paul was tailgating her car presumably because Paul wanted Taylor to move into the right lane. When the cars stopped at the red traffic light, Taylor stated that Paul exited his vehicle and began "aggressively yelling" and displayed his middle finger to Taylor before finally returning to his vehicle. After approximately eight miles, Taylor recalled that, while in the process of passing Paul's vehicle, Paul "swerved his car into [hers]." Taylor described being almost off the road due to Paul's maneuver until Paul eventually moved into the right lane. After this, Taylor moved into the right lane behind Paul, and Paul sped off. Taylor asserted that her car was damaged.

A driver of a different car who observed both the altercation at the red traffic light and the impact between the vehicles, Roselle Harde, also testified. At the traffic light, Harde asserted that Paul exited his vehicle, displayed both of his middle fingers towards Taylor, and reentered his vehicle and drove off. Approximately eight miles later, Harde was driving in the right lane while Taylor drove next to Harde in the left lane. Harde witnessed Paul's car drive in between Harde and Taylor's cars, causing Harde to move to the right shoulder. Harde attempted to alert Paul that he could drive in front of her in order to avoid injury to any party. Thereafter, Harde observed Paul's vehicle make contact with Taylor's vehicle. After the cars hit, Harde stated that Paul moved behind Taylor and took a picture of Taylor's license plate. Once Taylor then pulled off onto the shoulder, Harde

6

did the same and gave Taylor her name and address. Harde later drove to Easton at the request of the police to identify Paul as the person who struck Taylor's vehicle.

The district court judge considered the testimony of Harde to be credible and found Paul guilty of two charges: failure to return to/remain at scene of accident involving damage to attended vehicle/property and negligent driving. The district court judge then sentenced Paul to sixty days of incarceration, suspending all but twenty days, to begin immediately. The district court judge did not immediately set a bond and made a request that Paul's attorney return at 4:30 p.m. While confined in a holding cell, Paul made a phone call to his wife. Paul told her that he had not received a fair trial because "these people on the Eastern Shore, they're a bunch of hicks here and they hate people from Annapolis." Paul asserts that, when his attorney conversed with the district court judge at 4:30 p.m., the district court judge set a $100,000 bond because "he didn't appreciate [Paul] calling people from the Eastern Shore hicks." That evening, Paul paid a bondsman $10,000 to secure his release.

Paul appealed the district court judge's ruling to the circuit court and hired a new attorney for the appeal. Although Paul was not privy to the conversations between his new attorney and the Assistant State's Attorney, Paul believed that the attorneys had worked out a plea agreement prior to the court proceeding. At the circuit court trial on September 16, 2013, Paul's attorney offered a plea agreement for the record but the Assistant State's Attorney claimed that the State had not agreed to that deal. In his deposition, Paul admitted that his attorney "maybe thought he had a deal and maybe put too much emphasis on that thought." Thus, before the circuit court judge, Paul pleaded guilty to the two charges he

7

had been found guilty of in district court. After the Assistant State's Attorney reiterated the factual background, the circuit court judge described Paul's actions in the road rage incident as "not only strange" but "dangerous behavior." The circuit court judge sentenced Paul to twenty days of incarceration to be served on weekends, with credit for the one day Paul served prior to posting bond following the district court case.

*Complaint of Edward Kerman, Esq.*

During contentious litigation, an opposing attorney, believing that Paul had misrepresented whether his client signed a non-disclosure agreement, filed a complaint with the Attorney Grievance Commission.

Paul represented David Burke and Burke's business, Todd Allan Mailing, LLC ("TAM") in an action initiated by Paul alleging claims of debt and fraudulent conveyance. During the case, Paul helped to facilitate a settlement between his clients and defendants Allan Kullen and Todd Allan Printing Co., Inc. ("TAPCO"). As part of the settlement, Paul agreed to dismiss the lawsuit as to Kullen personally. During the settlement hearing, TAPCO's counsel admitted liability but also stated that the corporation was insolvent. At this hearing on March 14, 2014, a consent judgment was entered in favor of Burke and TAM against TAPCO in the amount of $455,000.

Approximately twenty days later, while Paul attempted to aid enforcement of the judgment, he learned of foreclosures involving the entities, EMAS One Partnership and the Diane K. Kullen Revocable Trust, with which Allan Kullen was involved. As noted by the hearing judge, "Diane K. Kullen is Allan Kullen's wife and this trust was formed for the benefit of her husband and their two children." Additionally, at Paul's evidentiary hearing,

8

Craig Holcomb, the attorney for Diane K. Kullen Revocable Trust and EMAS One Partnership, testified that his clients invested more than $2 million in TAPCO in 2009. A promissory note had been created and filed, making it a secured instrument against the property of TAPCO, which was public record. In August 2013, Holcomb represented the Diane K. Kullen Revocable Trust and EMAS One Partnership in a foreclosure on the loan secured by the TAPCO property, which left TAPCO without assets at the time of Paul's settlement. Paul claimed to not know any of this information until after the settlement. Paul believed there was no legal distinction between Allan Kullen and these entities, including EMAS One Partnership, the Diane K. Kullen Revocable Trust, and TAPCO. Although TAPCO was insolvent, with the additional foreclosures by Allan Kullen-operated entities, Paul believed he could potentially foreclose on additional assets. On May 22, 2014, Paul brought a separate civil action on behalf of Burke and TAM against, amongst others, TAPCO, Allan Kullen, EMAS One Partnership, and the Diane K. Kullen Revocable Trust.

It was not until May 2014 that Holcomb realized there were additional TAPCO assets his clients could be entitled to due to the foreclosure. As such, Holcomb examined the possibility that Burke may have transferred some property to his employer, Capital Press. As part of his investigation, Holcomb sent a letter to Burke directly and Capital Press. After receiving a copy of the letter from Burke, Paul called and emailed Holcomb, asserting that because of Holcomb's letter, Burke was in jeopardy of losing his job. Thereafter, Holcomb sent a second letter to Capital Press asking it to disregard the first letter because Holcomb needed to further investigate the matter. Following this interaction

9

between Holcomb and Paul, Paul added Holcomb as a defendant to the pending lawsuit in an amended complaint. The amended complaint alleged that Holcomb and his clients engaged in tortious interference with Burke's business relationship with his employer Capital Press. If Holcomb had not been added to the lawsuit, Paul testified that he would not have been able to prove who told Holcomb to send the letter. Paul asserted that suing all parties involved ensured that he protected his client's interests at the time.

Thereafter, Paul filed a motion to disqualify Holcomb as counsel for defendants EMAS One Partnership and the Diane K. Kullen Revocable Trust. Holcomb later withdrew his appearance, and Edward Kerman entered his appearance on behalf of the trust and the partnership. Later, Paul served a request for production of documents on Kerman. Kerman believed the Diane K. Kullen Revocable Trust to be a testamentary trust and that the request covered irrelevant material. As such, Kerman did not want to provide Paul and his client the names of the beneficiaries and did not comply with Paul's request for production of documents. Paul testified that since there had been a lack of documentary disclosure from the opposing parties, and as a way of easing Kerman's concern, Paul sent a non-disclosure agreement, purporting to be signed by Burke and Paul, regarding the disclosure of documents. Upon receiving the non-disclosure agreement, Kerman recognized that the signature claimed to be that of Burke was clearly not his. This realization prompted Kerman to file a complaint with the Attorney Grievance Commission, alleging that Paul misrepresented that the document was signed by Burke. Paul and Burke both testified that, as part of their retainer agreement, Paul had Burke's power of attorney. As such, Paul retained the authorization to sign Burke's name on documents relating to the

10

representation. Paul did not disclose to Kerman that he was signing Burke's name in the letter or on the non-disclosure agreement. After learning of Kerman's complaint with the Attorney Grievance Commission, Paul submitted to Kerman a second version of the non-disclosure agreement physically signed by Burke.

Ultimately, the Circuit Court for Prince George's County either dismissed or granted summary judgment to all defendants listed in the amended complaint. The circuit court, in the same proceeding, later concluded that the claims brought by Paul against Holcomb were brought in bad faith and without substantial justification. A judgment was entered against Paul and Burke, jointly and severally, for approximately $10,248. Paul appealed the decision. The Court of Special Appeals affirmed the decision of the circuit court. *Todd Allan Mailing, LLC v. Holcomb*, No. 525, Sept. Term, 2016, 2018 WL 1081366 at *6 (Md. Ct. Spec. App. Feb. 23, 2018).

## Standard of Review

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. *See* Md. Rule 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 588 (2016) ("This Court reviews for clear error a hearing judge's findings of fact." (Citations omitted)); Md. Rule 19-741(b)(1) ("The Court of Appeals shall review *de novo* the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. *See* Md. Rule 19-727(c) ("Bar Counsel has the burden of

11

proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

**DISCUSSION**

*Conclusions of Law*

**MLRPC 3.1**

MLRPC 3.1 requires that a lawyer not bring or defend a lawsuit that is frivolous. Bar Counsel alleges that Paul violated MLRPC 3.1 because the circuit court found that "the claims brought against Holcomb were brought in bad faith and without substantial justification." The hearing judge found that Bar Counsel did not present "clear and convincing evidence that [Paul] filed a frivolous action by adding Holcomb to the May[] 2014 litigation for tortious inference." The hearing judge did not find the circuit court's holding that the claims brought by Paul against Holcomb were in bad faith and without substantial justification "as being conclusive that [Paul] violated MLRPC 3.1." Paul testified that he believed he needed to add Holcomb to the May 2014 litigation in order to protect his client's rights after Holcomb sent a letter to Burke and his employer. The hearing judge held that Paul, at the time of adding Holcomb to the May 2014 litigation, "did not need to have all of the evidence to prove his case; there simply needed to be facts and applicable law to form a good faith argument."

Additionally, Holcomb admitted in his testimony that "reasonable minds could differ on whether an agreement was reached" in the action which prompted Holcomb to send Burke the letter. The circuit court noted that Holcomb sending the letter directly to Burke rather than to Paul was a mistake. Paul, after being alerted of Holcomb's letter,

12

chose to aggressively defend Burke's rights in the property. Paul's decision was understandable given that his client's job security with his employer was in jeopardy due to Holcomb's letter. Although Paul's client ultimately did not suffer adverse employment consequences due to Holcomb's letter, Paul had a non-frivolous basis for adding Holcomb to the lawsuit. As such, we agree with the hearing judge's determination that Bar Counsel failed to present clear and convincing evidence that Paul violated MLRPC 3.1.

### MLRPC 8.2(a)

MLRPC 8.2(a) requires that a lawyer "not make a statement that the attorney knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer . . . ." Bar Counsel alleges that Paul violated MLRPC 8.2(a) in statements to Bar Counsel regarding the trial judge in the district court case as well as the Assistant State's Attorney who handled the case.

First, Bar Counsel alleges that Paul made statements which violated MLRPC 8.2(a) against the district court judge in his response letters to Bar Counsel. Paul suggested that the district court judge imposed a greater bond upon him because the district court judge had heard of his telephone conversation with his wife in which Paul stated "you can't get a fair trial from these people on the Eastern Shore. They're a bunch of hicks here and they hate people from Annapolis." The hearing judge found that Paul "was merely stating his opinion to his wife" and that there was "no evidence that he was aware his private conversation could be overheard" or that Paul intended his opinion to be made public. The hearing judge concluded that without testimony from Paul's lawyer in the district court case, whom Paul testified at his deposition told him that the district court judge had

13

imposed the high bond because of overhearing the conversation, or from the district court judge himself, Bar Counsel did not meet its burden. For these reasons, we agree with the hearing judge's determination that Bar Counsel failed to present clear and convincing evidence that Paul violated MLRPC 8.2(a) for his statements regarding the district court judge.

Second, Bar Counsel asserts that Paul violated MLRPC 8.2(a) because, in a response to Bar Counsel, Paul alleged that an Assistant State's Attorney reneged on an agreement for a continuance in the district court case. The hearing judge found that Bar Counsel "did not call any witnesses in regards to this portion of the allegations." Rather, at the evidentiary hearing, the only evidence submitted on this issue was Paul's deposition testimony that the Assistant State's Attorney reneged on the agreement for a continuance. In addition, the hearing judge noted that, due to "the fast pace" of district court, it is plausible that the Assistant State's Attorney agreed to the continuance, later realized that two witnesses were present, and opposed the continuance due to the witnesses attending the proceeding. The hearing judge concluded that without testimony from the Assistant State's Attorney stating she never agreed to the continuance, Bar Counsel failed to present clear and convincing evidence that Paul made a false statement concerning the Assistant State's Attorney's integrity. We agree with the hearing judge's determination that Bar Counsel failed to present clear and convincing evidence that Paul violated MLRPC 8.2(a) for his statements regarding the Assistant State's Attorney.

**MLRPC 8.4(a) and (b)**

14

MLRPC 8.4(a) states that it is professional misconduct for an attorney to "violate . . . the Maryland Lawyers' Rules of Professional Conduct." MLRPC 8.4(b) forbids a lawyer from "commit[ing] a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney." Here, Paul pled guilty to negligent driving, Maryland Code, Transportation Article ("TP"), § 21-901.1(b), and failure to return and remain at scene of accident involving attended vehicle, TP § 21-103. Paul's pleading guilty and subsequent conviction is conclusive proof that Paul committed a criminal act. Md. Rule 19-738(i) ("In any proceeding under this Chapter, a final judgment of any court of record convicting an attorney of a crime, whether the conviction resulted from acceptance by the court of a plea of guilty or *nolo contendere*, . . . is conclusive evidence of the attorney's guilt of that crime.").

Importantly, and as noted by the hearing judge, while not all criminal offenses necessarily lead to a violation of MLRPC 8.4(b), many do. *Attorney Grievance Comm'n v. Post*, 350 Md. 85, 97 (1998) ("Rule 8.4(b) recognizes, by its reference to character traits, rather than enumerating specific crimes, that commission of some crimes evidence or demonstrate a character flaw that" could result in disciplinary action.). The hearing judge found, by clear and convincing evidence, Paul violated MLRPC 8.4(b) because "[Paul] got out of his vehicle and approached the female driver of the other car in an aggressive manner" and later "forc[ed] her to drive off of the paved roadway . . . caus[ing] damage to the female's car." Based upon these facts, the hearing judge stated that due to "the nature of this 'road rage' incident, [Paul]'s dangerous and continued threatening behavior stretching two counties, and the Circuit Court judge's comments regarding the incident,"

15

Paul's conduct did reflect adversely on his "trustworthiness and fitness as an attorney" and that Paul violated MLRPC 8.4(b). We agree with the hearing judge's assessment of Paul's conduct; Paul's dangerous and threatening conduct reflected adversely on his trustworthiness and fitness as an attorney. Accordingly, clear and convincing evidence supports the conclusion that Paul's conduct violated both MLRPC 8.4(a) and (b).

## MLRPC 8.4(c)

Bar Counsel excepts to the hearing judge's failure to conclude that Paul violated 8.4(c) and 8.4(d). In his exceptions, Paul responds to Bar Counsel's arguments. A lawyer violates MLRPC 8.4(c) if the lawyer "engage[s] in conduct involving dishonesty, fraud, deceit or misrepresentation." Bar Counsel first excepts to the hearing judge's finding that Paul did not violate MLRPC 8.4(c), stating that Paul "signed his client's name on a [n]on-[d]isclosure [a]greement and provided the [a]greement to opposing counsel with a letter in which he misrepresented that the agreement had been signed by his client." Bar Counsel asserts that the hearing judge erred in focusing on forgery or Paul's intent to defraud rather than "recognizing the distinction between fraud and deceit and misrepresentation and dishonesty as used in the context of this Rule." In support, Bar Counsel cites *Attorney Grievance Comm'n v. Dore* for the notion that if "an attorney knowingly makes a false statement, he necessarily engages in conduct involving misrepresentation." 433 Md. 685, 707 (2013). Bar Counsel contends that Paul violated MLRPC 8.4(c) when "he made a knowing misrepresentation that a non-disclosure agreement being sent to the opposing parties' counsel was 'signed by Mr. Burke and myself' and when he knew that his client had not signed the agreement." Bar Counsel argues that though Paul "may have signed his

16

client's name on the agreement with the prior consent of his client and may have been named attorney-in-fact for the client," Paul failed to "indicate in the letter, or on the agreement that he was signing Burke's name as attorney-in-fact or any other capacity on behalf of Burke" and that this omission was a misrepresentation.

In response, Paul argues that Bar Counsel "cannot cite any case from any jurisdiction that requires the disclosure that a person has signed someone's name with permission, or that a person has signed with a power of attorney, before or at the time of signing." In his exceptions, Paul further contends that "if you have permission to sign someone's name, it is a valid execution that withstands judicial scrutiny in any legal matter." Paul states that he acquired Burke's permission to sign his name regarding the non-disclosure agreement on December 24, 2014. In addition, Paul posits that a signed non-disclosure agreement executed in 2012, between the same defendants and Burke, was effective until March 24, 2015. Lastly, Paul asserts that he did disclose that he had signed his client's name "with permission and authority" upon becoming aware that opposing counsel disputed the signature.

To first determine whether Paul made a misrepresentation, we must define the term. *Bd. of Educ. v. Marks–Sloan,* 428 Md. 1, 28 (2012) ("To determine the ordinary meanings of those words [it is appropriate] to consult their dictionary definitions."). In *Dore*, we consulted Black's Law Dictionary which defined misrepresentation as "the act of making a false or misleading assertion about something, usually, with the intent to deceive." 433 Md. at 698. In the present case, we cannot conclude that Paul's signing of Burke's name or his "omission" to indicate that he was signing Burke's name "as attorney-in-fact or any

17

other capacity on behalf of Burke" was "a false or misleading assertion" or made with an intent to deceive. Before the signing of the non-disclosure agreement, Paul and Burke discussed the relevant agreement, and Burke gave Paul his permission to sign his name on the agreement because Burke was away on vacation. Since Paul had the legal right to sign Burke's name on the non-disclosure agreement, Paul's statement that the agreement "was signed by Mr. Burke and myself" cannot be construed as "false" or "misleading" even though Burke did not physically sign the agreement. We additionally note that once Paul became aware of Kerman's dispute of Burke's signature, Paul disclosed that he had signed the non-disclosure agreement "with permission and authority" of Burke. This forthright action casts doubt on the contention that Paul intended to deceive opposing counsel. Therefore, we concur with hearing judge's conclusion that Bar Counsel failed to prove by clear and convincing evidence that Paul engaged in any kind of dishonesty, fraud, deceit, or misrepresentation. As such, we hold that Paul did not violate MLRPC 8.4(c), we overrule Bar Counsel's exception, and we sustain Paul's exception.

### MLRPC 8.4(d)

Under MLRPC 8.4(d), it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Bar Counsel excepts to the hearing judge's finding that Paul's "knowing misrepresentations to opposing counsel" provided clear and convincing evidence of conduct "likely to negatively impact the public's perception of the legal profession, in violation of MLRPC 8.4(d)." In support, Bar Counsel cites Paul's earlier disciplinary action in which we found that the cutting and pasting of an attorney's signature "without the other attorney's authorization was conduct

18

prejudicial to the administration of justice, in violation of MLRPC 8.4(d)." *Attorney Grievance Comm'n v. Paul*, 423 Md. 268, 281 (2011). In response, Paul states that to grant Bar Counsel's exception on this issue, we "would have to totally exclude the testimony of Mr. David Burke and the more than 15 email, letter and exculpatory documents admitted into evidence." Because the hearing judge concluded that Paul did not make a knowing misrepresentation to opposing counsel *supra*, Paul could not have violated MLRPC 8.4(d) for the same conduct which did not violate MLRPC 8.4(c). We agree with the hearing judge, overrule Bar Counsel's exception, and sustain Paul's exception.

Lastly, Bar Counsel excepts to the hearing judge's finding and asserts that Paul violated MLRPC 8.4(d) because Paul "engaged in criminal conduct adversely reflecting on his honesty[,] trustworthiness and/or fitness . . . [which] provide[s] clear and convincing evidence that this same conduct would tend to bring the legal profession into disrepute." In support, Bar Counsel submits that that we have held that "conduct that impacts negatively on the image or the perception of the courts or the legal profession and that engenders disrespect for the courts and for the legal profession may be prejudicial to the administration of justice." Further, Bar Counsel notes that we have held that certain conduct unrelated to the practice of law may be prejudicial to the administration of justice. *Attorney Grievance Comm'n v. Childress*, 364 Md. 48, 63–64 (2001) (holding that soliciting sex with an underage person constituted conduct prejudicial to the administration of justice); *Attorney Grievance Comm'n v. Marcalus*, 414 Md. 501, 522 (2010)[3] (holding

---

[3] There are three cases cited in this opinion involving Jeffrey S. Marcalus: *Attorney Grievance Comm'n v. Marcalus*, 401 Md. 496 (2007); *Attorney Grievance Comm'n v.*

19

that distributing prescription pain medication containing controlled dangerous substances constituted conduct prejudicial to the administration of justice); *Attorney Grievance Comm'n v. Reno*, 440 Md. 414, 418 (2014) (holding that giving a regulated firearm to a person who the attorney knew had been convicted of a disqualifying crime constituted conduct prejudicial to the administration of justice); *Attorney Grievance Comm'n v. Hoang*, 433 Md. 600, 610 (2013) (holding that failing to file personal income tax returns for eight years constituted conduct prejudicial to the administration of justice).

In response, Paul states that the test for whether a MLRPC 8.4(d) violation has occurred is whether "purely private conduct is criminal or so egregious as to make the harm, or potential harm, flowing from it patent." *Attorney Grievance Comm'n v. Basinger*, 441 Md. 703, 719 (2015) (quoting *Attorney Grievance Comm'n v. Link*, 380 Md. 405 428–29 (2004)). Paul argues that his private conduct which forms the basis for the traffic violations does not even come close to the conduct found in the cases cited by Bar Counsel. Additionally, Paul contends that traffic violations have "nothing to do with a lawyer and his performance in the courtroom or on behalf of his clients" and have "no effect on the day to day operations of the court."

"Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct . . . would negatively impact the perception of the legal profession of a reasonable member of the public[.]" *Attorney Grievance Comm'n v. Marcalus*, 442 Md. 197, 205 (2015) (internal citations and quotations omitted). As reiterated recently in the *Marcalus* case, "a lawyer

---

*Marcalus*, 414 Md. 501, 522 (2010); and *Attorney Grievance Comm'n v. Marcalus*, 442 Md. 197, 205 (2015).

violates MLRPC 8.4(d) through purely private conduct—*i.e.,* conduct that is entirely unrelated to the practice of law—if and only if the lawyer's conduct 'is criminal or so egregious as to make the harm, or potential harm, flowing from it patent[.]'" *Id.* at 207 (quoting *Link*, 380 Md. at 429). The attorney's conduct in *Marcalus* was found to be "not entirely unrelated to the practice of law" because the attorney "engaged in 'sexting' and suggestive conduct with a self-represented party in litigation in which the lawyer represented the opposing party." *Id.* at 206, 207. Unlike the attorney in *Marcalus*, Paul's conduct at issue was "conduct that [was] entirely unrelated to the practice of law," *see id.*, however, his conduct was criminal since he pleaded guilty to negligent driving and failure to return and remain at the scene of an accident involving an attended vehicle. Additionally, Paul's criminal conduct in the "road rage" incident involved dangerous, harmful, and threatening behavior stretching across two counties. As such, Paul's conduct would negatively affect a reasonable person's perception of the legal profession. We disagree with the hearing judge's conclusion and find that clear and convincing evidence exists that Paul's conduct violated MLRPC 8.4(d). As such, we sustain Bar Counsel's exception and we overrule Paul's exception.

## SANCTION

As we have often stated, the purpose of attorney disciplinary proceedings is to protect the public and deter other lawyers from engaging in misconduct rather than simply punishing the lawyer. *Attorney Grievance Comm'n v. Mollock*, 450 Md. 133, 158 (2016). The public is protected when sanctions are "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance*

21

*Comm'n v. Pennington*, 387 Md. 565, 596 (2005) (citing *Attorney Grievance Comm'n v. Ellison*, 384 Md. 688, 714 (2005)).  This Court has established standards to weigh the severity of an attorney's misconduct.[4]

---

[4] In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline  proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

*Attorney Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277–78 (2016) (cleaned up).

Bar Counsel recommends that Paul's conduct warrants between "an indefinite suspension and . . . a six[-]month suspension." Bar Counsel finds similarities between the present matter and *Attorney Grievance Comm'n v. Eckel*. In *Eckel*, an attorney, convicted of second-degree assault, fourth-degree sex offense, and false imprisonment because of an incident involving a female acquaintance, was indefinitely suspended for violating MLRPC 8.4(b). 443 Md. 75, 88–89 (2015). Bar Counsel notes that both the attorney in *Eckel* and Paul, in the present matter, each had received a prior reprimand. Also, Bar Counsel contends that Paul's conduct is more egregious than the attorney's conduct in *Attorney Grievance Comm'n v. Smith*. In *Smith*, an attorney was convicted of impersonating a police officer and intimidating a witness, violating MLRPC 8.4(a)-(d), and received a six-month suspension. 405 Md. 107, 115–16, 130 (2008). Bar Counsel asserts that, unlike in *Smith*, Paul's conduct was "dangerous" and "aggressive" and capable of repetition due to Paul's failure "to recognize the seriousness of his offense."

In addition, Bar Counsel cites *Attorney Grievance Comm'n v. Marcalus* in which an attorney received a sixty-day suspension after engaging in criminal conduct adversely reflecting on his honesty, trustworthiness, or fitness when he exchanged Vicodin for a sexual act. 414 Md. at 525. Bar Counsel highlights this Court's discussion of the attorney's voluntary disclosure, which is an important mitigating factor, but only briefly addresses the attorney's prior discipline. In the attorney's prior discipline case, we granted a joint petition and indefinitely suspended the attorney from the practice of law in Maryland with

23

the right to apply for reinstatement no sooner than thirty days after the attorney violated MLRPC 8.4(d) by engaging in "sexting" with a client. *Attorney Grievance Comm'n v. Marcalus*, 401 Md. 496 (2007). Lastly, Bar Counsel cites two Kansas cases. An attorney was suspended for one year after being convicted of traffic violations, but the attorney also made misrepresentations and neglected to monitor a client's case. *In re Pistotnik*, 254 Kan. 294, 301–06 (1993). Additionally, the Kansas Supreme Court considered "Pistotnik's pattern of repeated offenses" which constituted "violent conduct." *Id.* at 303. In the second case, Bar Counsel notes that the Kansas Supreme Court decided that a public censure was the appropriate sanction for misconduct involving "disorderly conduct and a traffic infraction violating Rule 8.4(b) as well as conduct involving the reimbursement of funds and the safekeeping of property in violation of Rules 8.4(c) and 1.15." *In re Sutton*, 265 Kan. 251, 251–55 (1998). Most relevant, the attorney in *Sutton* disobeyed a stop sign at a road construction site and threw a full soda bottle when confronting a road worker, which resulted in criminal charges. *Id.* at 252.

Paul believes that no further punishment is necessary. In support, Paul asserts that he "has already been punished by the imposition of a One Hundred Thousand Dollar ($100,000.00) bond," for which Paul paid a bondsman $10,000 to secure release. Paul contends that this bond was "an abuse of judicial discretion and was an excessive, unlawful bond." Paul contends that *Sutton* is comparable to the current matter though even a reprimand "would be too severe a punishment based on the punishment already meted out to [Paul]."

24

In addition, Paul argues that the "vast majority of the costs [Bar Counsel] submitted are for charges pursued by [Bar Counsel] that [Bar Counsel] lost in the Circuit Court" and that "a substantial amount of the costs were dedicated to the pursuit of charges against [Paul] for violating MLRPC 3.1 while the matter was on appeal." Paul focuses his argument on the fact that Bar Counsel "based its [MLRPC 3.1] case" upon the circuit court's ruling that Paul added Holcomb to the lawsuit in "bad faith" and "without substantial justification" even though that ruling was on appeal to the Court of Specials and that Paul requested that the MLRPC 3.1 portion be stayed pending the appeal. Paul states that "charges pursued at the Peer Review [hearing] were charges for violations of MLRPC 3.1 and 8.4(d), violations that [Bar Counsel] did not prevail."

The hearing judge concluded that three aggravating factors apply to Paul. First, Paul received prior attorney discipline, in which he was found to have violated MLRPC 8.4(d) and was sanctioned with a public reprimand. *Paul*, 423 Md. at 280, 286. Second, Paul does not admit any wrongdoing regarding the traffic incident and still contends that he did not act in an aggressive manner or make contact with another vehicle. Lastly, since Paul pled guilty to two traffic offenses, the hearing court "established that there was conclusive proof [that Paul] committed those criminal acts."

The hearing court also recognized four mitigating factors. First, the hearing court found that Paul was timely, cooperative, and thorough with his response letters, deposition testimony, and various filings with the hearing court. Second, through the testimony of character witness Michael Darrow, Esquire, Paul established "his good character and reputation." Third, the hearing judge noted that there was a delay in the disciplinary

25

proceedings since Paul pled guilty to the traffic offenses, the basis of the MLRPC 8.4(b) violation, in September 2013, but the Petition was not filed until March 2017, nearly four years later. Finally, the hearing court recognized that Paul "pled guilty to a misdemeanor traffic offense" regarding the traffic incident in Dorchester County and the circuit court "sentenced [Paul] to twenty days of incarceration to be served on weekends which he successfully completed."

Bar Counsel's discussion of *Eckel*, *Smith*, and *Marcalus* is of minimal help in the present matter. The attorney in *Eckel* was convicted of "the serious crime of assault in the second degree" which could lead to a "maximum sentence exceed[ing] three years." 443 Md. at 89. The attorney in *Smith* misrepresented his identity to a witness, falsely representing himself as a police officer, violating MLRPC 8.4(a)-(d). 405 Md. at 118–19. In *Marcalus*, an attorney violated MLRPC 8.4(d) for a second time. 414 Md. at 522. Of note though, we commented on Marcalus's "relatively minor" crime in determining a sanction. *Id.* at 525. Here, Paul was convicted of misdemeanor traffic violations, and he has not made any misrepresentations or violated MLRPC 8.4(c). Paul believes that *Sutton* is an apt comparison to his case. Factually, *Sutton* is analogous to the present matter since both cases involved attorneys engaged in "road rage" situations. Rather than throwing a soda bottle at a road worker, however, Paul's conduct included dangerous driving which could have inflicted harm on multiple motorists traveling at high speeds.[5] 265 Kan. at 252.

---

[5] We note the seriousness of aggressive driving behavior and its deleterious and increasingly prevalent effect in Maryland. *See Prevalence of Self-Reported Aggressive Driving Behavior*, AAA Found. for Traffic Safety, July 2016, at 1. A Maryland Department of Transportation study found that between 2011 and 2015, "aggressive

As such, we believe that Paul's sanction must be greater than the sanction found in *Sutton* but should not rise to the levels found in *Eckel*, *Smith*, or *Marcalus*. Upon our independent review, we conclude that a definite suspension of thirty days is the proper sanction.

Paul argues against the imposition of certain costs, including trial and deposition transcripts and travel expenses for peer review attendance, because Bar Counsel "did not meet its burden and lost" in its MLRPC 3.1 and 8.4(d) charges. Maryland Rule 19-709(a) states

> Except as provided in section (c) of this Rule, and unless the Court of Appeals orders otherwise, the *prevailing party* in proceedings under this Chapter is entitled to *reasonable and necessary costs*. By order, the Court may allocate costs among the parties.

(Emphasis added). Maryland Rule 19-709(b) defines costs as

> (1) court costs;
> (2) reasonable and necessary fees and expenses paid to an expert witness who testified in the proceeding before the circuit court judge;
> (3) reasonable and necessary travel expenses of a witness who is not an expert witness;
> (4) reasonable and necessary costs of a transcript of proceedings before the circuit court judge;
> (5) reasonable and necessary fees and expenses paid to a court reporter or reporting service for attendance at a deposition and for preparing a transcript, audio recording, or audio-video recording of the deposition; and
> (6) other reasonable and necessary expenses, excluding attorneys' fees, incurred in investigating the claims and in prosecuting or defending against the petition for disciplinary or remedial action before the circuit court judge and in the Court of Appeals.

---

driving accounted for an average of five percent of all traffic crashes, seven percent of all injury crashes, and eight percent of all fatal crashes in Maryland." *Federal Fiscal Year 2018 Maryland Highway Safety Plan*, Maryland Dep't of Transp., at 92.

Although Paul is correct in asserting that Bar Counsel has not succeeded in its MLRPC 3.1 charge, Bar Counsel remains the prevailing party since we concluded that Paul violated MLRPC 8.4(a), (b), and (d). Additionally, Paul has not articulated any basis for us to conclude that the costs submitted by Bar Counsel were not "reasonable" or "necessary." Simply because Bar Counsel was ultimately unsuccessful in its MLRPC 3.1 charge does not facially render its pursuit of the charge unreasonable or unnecessary, nor does it make Paul the prevailing party in the overall action. As such, we decline to exercise the discretion specified in Maryland Rule 19-709(a) for this matter.

## CONCLUSION

For the above reasons, we suspend Paul from the practice of law in Maryland for thirty days effective immediately.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d). JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DANA A. PAUL IN THE SUM OF THESE COSTS.**

28